# Richmond.

## Button v. The State Corporation Commission.

### August 17, 1906.

1. CONSTITUTIONAL LAW—*State Constitution—Restraining Instrument—Doubts as to Constitutionality of Law.*—The State Constitution, unlike the Federal Constitution, in this particular, is a restraining instrument, and in the matter of enacting laws the Legislature is omnipotent, except in so far as it is restrained by the State or Federal Constitution, either in express terms or by necessary implication. Its enactments, therefore, are always presumed to be constitutional, and can never be declared otherwise, except where they *clearly and plainly* violate the Constitution. All doubts are resolved in favor of their validity, and, in resolving doubts, the legislative construction put upon the Constitution is entitled to great consideration, though it will not be given a controlling effect.

2. CONSTITUTIONAL LAW—*Commissioner of Insurance—Power to Appoint—General Words Following Specific Enumeration.*—Independently of the Constitution, the Legislature has power to establish and officer a bureau of insurance, and the power to appoint a commissioner of insurance is not taken away from it by section 155 of the Constitution declaring that the State Corporation Commission "shall have one clerk, one bailiff, and such other clerks, officers, assistants and subordinates as may be provided by law, all of whom shall be appointed, and subject to removal, by the Commission." The same section of the Constitution declares that the Legislature may establish within the department, and subject to the supervision and control of the Commission, a subordinate division or bureau of insurance. The enumeration of a lower class of officers to be appointed and removed by the Commission did not deprive the Legislature of the right and power to select the head of the bureau, the commissioner of insurance. General words following a specific enumeration should be applied to other persons or things of the same general class as those enumerated.

Button *v*. State Corp. Com., 105 Va. 634.     635

Opinion.

Original application for *mandamus* to State Corporation Commission.

*Mandamus awarded.*

The opinion states the case.

*Leake & Carter* and *S. L. Kelly,* for the petitioner.

*Christian & Christian,* for the respondent.

WHITTLE, J., delivered the opinion of the court.

At a special term of this court, convened at the instance of the Governor of the Commonwealth, in the city of Richmond, July 31, 1906, a peremptory writ of mandamus was awarded, commanding the State Corporation Commission to allow Joseph Button, who had been chosen commissioner of insurance for the State of Virginia by the General Assembly, and commissioned as such by the Governor, to qualify before them by taking the oaths of office and executing bond, as required by law.

The Commission had declined to permit the petitioner to qualify, entertaining the opinion that the provision in the act of March 9, 1906, for the election of the commissioner of insurance by the General Assembly was in conflict with section 155 of the State Constitution and void. The sole question, therefore, for our determination is the constitutionality of that act.

The provisions of article 12, section 155 of the Constitution involved in this controversy are as follows:

"The Commission shall annually elect one of their members chairman of the same, and shall have one clerk, one bailiff and such other clerks, officers, assistants and subordinates as may be provided by law, all of whom shall be appointed, and subject

to removal, by the Commission. It shall prescribe its own rules of order and procedure, except so far as the same are specified in this Constitution or any amendment thereof. The General Assembly may establish within the department, and subject to the supervision and control of the Commission, subordinate divisions, or bureaus, of insurance, banking or other special branches of the business of that department."

The Commission denied the constitutionality of the statute in the particular mentioned, maintaining that section 155 of the Constitution devolved the duty upon them of appointing the insurance commissioner.

Though the question before us lies in narrow compass, it is of more than ordinary importance, and in approaching the consideration of it there are certain fundamental principles which must not be lost sight of. Thus, in a government such as ours of reserved powers, the legislative department acknowledges no superiors, except the Federal and State Constitutions, and its authority to enact laws unless forbidden by one or the other of those instruments in express terms, or by necessary implication, is paramount. *Smith* v. *Commonwealth,* 75 Va. 904; *Virginia-Tennessee C. & I. Co.* v. *McClelland,* 98 Va. 424, 36 S. E. 479. Moreover, there is an obvious distinction between the construction of grants of power by the Federal Constitution to Congress and grants of power by the State Constitution to the General Assembly. In the first case, the grant is the sole source of congressional power, and is therefore to be construed strictly, while in the latter the grant, being merely declaratory of pre-existent power, is to be construed liberally. In the one instance the expositor must search for constitutional sanction authorizing the enactment; in the other the quest must be for constitutional limitation forbidding it. The Constitution is in no sense a grant of power to the Legislature, but it is a limitation to its general powers.

So it has been said: "In the partition of power between the three departments of government the power of making laws is conferred on the General Assembly; some laws they are compelled by mandate to make; other laws they are forbidden to make; these are the only limits to their powers; all subjects of legislation not affected by mandate, nor by prohibition, are within the discretion of the General Assembly." *Commonwealth* v. *Drewry,* 15 Gratt. 1-5.

It has also been held that "The Constitution of the United States is a source and grant of power to the Congress of the United States. It is an enabling and not a restraining instrument. Congress can do nothing except what the Constitution, either directly or by reasonable construction, authorizes it to do. The Constitution of Virginia, however, is a restraining instrument, and the Legislature of the State possesses all legislative power not prohibited by the Constitution." *Brown* v. *Epps,* 91 Va. 726, 21 S. E. 119, 27 L. R. A. 676.

These propositions are axiomatic and lie at the very foundation of our institutions.

As corollary to the foregoing postulates arises the rule of construction that in a doubtful case it is the province of the courts to resolve all doubts in favor of the constitutionality of the act of the Legislature.

"Plenary power in the Legislature for all purposes of civil government is the rule. A prohibition to exercise a particular power is an exception. In inquiring, therefore, whether a given statute is constitutional, it is for those who question its validity to show that it is forbidden." Cooley's Const. Lim., p. 105.

The decisions of this court abound with illustrations of the rule.

It is said: "We can declare an act of the General Assembly

void only when such act *clearly and plainly* violates the Constitution, and in such manner as to leave no doubt or hesitation on our minds." *Commonwealth* v. *Moore & Goodsons,* 25 Gratt. 951, 953.

Again, "Upon the most familiar principles, repeatedly declared by the decisions of the Supreme Court of the United States, and of the supreme courts of all the states, and by none more emphatically than by this court, every statute is presumed to be constitutional. It cannot be declared by the courts to be otherwise unless it be made clearly so to appear. The Legislature is omnipotent in making laws, unless restrained by the express or implied provisions of the State or National Constitution." *Virginia-Tennessee Coal & Iron Co.* v. *McClelland,* 98 Va. 424, 36 S. E. 479.

It is also a familiar doctrine that legislative construction of the Constitution is under certain circumstances of great importance in constitutional exegesis. 6 Am. & Eng. Ency. of Law, 932, and cases cited in note 9.

The following decisions exemplify the general rule:

"That this is the true construction of the Constitution is also shown by the contemporaneous exposition of it by the Legislature, which assembled immediately after its adoption, and organized the departments of government according to its provisions." *Chahoon* v. *Comth.,* 21 Gratt. 822, 827-28.

"The construction placed on the Constitution of the State by the Legislature thereof is entitled to consideration, and, in case of doubt, should be influential in its construction, but cannot be permitted to overturn plain language." *Day* v. *Roberts,* 101 Va. 248, 43 S. E. 362.

Furthermore it has been declared that "When a state legislature is authorized by the Constitution to establish offices, the failure to expressly authorize the prescribing of qualifications

therefor does not impliedly preclude the exercise of that power." 6 Am. & Eng. Ency. of Law, 934, citing *State* v. *McAllister,* 38 W. Va. 485, 18 S. E. 770, 24 L. R. A. 343.

The court in that case recognizes the well settled distinction between the rules of construction applicable to a grant of power by the Federal Constitution to Congress and by the State Constitution to the General Assembly, holding that the power of the Legislature is supreme, except where restrained by the Constitution.

We entertain no doubt that in the absence of constitutional authority it would be entirely within the competency of the General Assembly of Virginia to establish and officer a bureau of insurance; and, in our opinion, there is nothing in the language of the Constitution which either expressly, or by fair implication, limits that power.

The language in question, which declares that the General Assembly may "establish within the department, and subject to the supervision and control of the Commission, subordinate divisions or bureaus of insurance, banking, or other special branches of the business of that department," is general and attaches no limitation to the exercise of the power. As remarked, the General Assembly, subject only to clear constitutional limitation, is supreme; and its authority to "establish" a "bureau" of insurance, without qualifying provisions, of itself imports the organization of an officered department.

In Webster's International Dictionary the verb "to establish" is defined: "To appoint or constitute for permanence, as officers, laws, regulations," etc. And the same high authority gives as the equivalent of "bureau" "A department of public business requiring a force of clerks; the body of officials in a department who labor under the direction of a chief."

Bouvier, in his Law Dictionary, says of the word "bureau":

"In the classification of the ministerial officers of government, and in the distribution of duties among them, a bureau is understood to be a division of one of the great departments of which the secretaries or chief officers constitute the cabinet."

It is a fair deduction, therefore, from these definitions, that the word "bureau," in the connection and sense in which it is used in the Constitution, implies not merely a division where business is to be conducted under certain rules and regulations, but includes the operating force as well. At all events, if it was the intention of the Constitutional Convention to use the word "bureau" in its narrower sense, and thereby deprive the General Assembly of an acknowledged and important governmental function, it is but reasonable to assume that such purpose would have been manifested in unequivocal terms.

The contention of the Commission is that they are clothed with the power of appointing the commissioner of insurance by the language "The Commission shall annually elect one of their number chairman of the same, and shall have one clerk, one bailiff and such other clerks, officers, assistants and subordinates as may be provided by law, all of whom shall be appointed, and subject to removal, by the Commission."

The collocation of the foregoing provision with respect to the paragraph authorizing the establishment of a bureau of insurance tends to show that it was not designed to embrace the head of that department.

But whether much or little weight be given to the connection and position of the respective provisions it must be allowed that the application of the rule of *ejusdem generis* to the enumerated class excludes therefrom the commissioner of insurance.

"It is a general rule of statutory construction that where general words follow an enumeration of persons or things by words of a particular and specific meaning, such general words

are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." Black on Interpretation of Laws, 141.

At page 145 the learned author observes: "A statute which enumerates persons or things of an inferior rank, dignity or importance is not to be extended by the addition of general words to persons or things of a higher rank, dignity or importance than the highest enumerated if there are any of the lower species to which the general words can apply."

The principle is happily illustrated by the *Archbishop of Canterbury's Case*, 1 Coke's Reports, Vol. I., Pt. 2, p. 555. The case turns upon the construction of an act of parliament in the following words: "That all monasteries, etc., colleges, etc., which hereafter shall happen to be dissolved, etc., or by any other means, come to the king's highness, shall be vested, deemed and judged by authority of this parliament in the very actual and real possession of the king;" and it was insisted that by operation of the words "by any means" in the statute of 1 E. 6, it vested in the king. "But it was answered by the defendant's counsel, and resolved by the court, that that could not be for several reasons:

"1. When the statute speaks of dissolution, renouncing, relinquishing, forfeiture, giving up, etc., which are inferior means, by which such religious houses came to the king, then the said latter words 'or by any other means' cannot be intended of an act of parliament, which is the highest manner of conveyance that can be; and therefore the makers of the act would have put that in the beginning, and not in the end, after other inferior conveyances, if they had intended to extend the act thereunto. But these words 'by any other means' are to be so expounded, scil.. by any other such inferior means. As it hath

been adjudged, that bishops are not included within the statute of 13 Eliz. cap. 10, for the statute beginneth with colleges, deans and chapters, parsons, vicars, and concludes with these words, 'and others having spiritual promotions'; these latter words do not include bishops. So the statute of West. 2, cap. 41, the words of which are, *statuit Rex, quod si abbates, priores. custodes hospital and aliarum domorum religiosarum,* &c. These latter words do not include bishops, as it is holden 1 & 2 Phil. and Mary, Dyer, 100, 109, for the cause aforesaid."

See, also, *Edson* v. *Hayden,* 20 Wis. 682; *In re Hermonge,* 21 N. Y. 481; *Reed* v. *Inghan,* 3 El. & Bl. 889; *Casher* v. *Holmes,* 2 B. & Al. 592.

This seems to be a universal rule of interpretation (Endlich on Interpretation of Statutes, sec. 412; Sutherland on Stat. Constr., sec. 277; *City of Lynchburg* v. *N. & W. Ry. Co.,* 80 Va. 237, 250, 56 Am. Rep. 592), and its application to the case in judgment forbids that the general word "officer" shall be interpreted to include the head of a bureau, who is an officer of higher grade than those specifically enumerated in the constitutional provision.

We are not disposed to admit that the construction which we have placed on section 155 of the Constitution will materially impair the efficiency of the Commission; but let the result be what it may, the principles of law and sound public policy alike demand that we interpret the Constitution as we find it, without undertaking to construe language of doubtful import, so as to enlarge the powers of one department of the government at the expense of another.

The court was actuated by these considerations in reaching the conclusion, heretofore announced, that the mandamus prayed for ought to be awarded.

*Mandamus awarded.*