# CRIMINAL CASES.

## Staunton.

COMMONWEALTH v. HENRY AND COMMONWEALTH v. SHANNON.

September 21, 1909.

1. INTOXICATING LIQUORS—*"Byrd Liquor Law"—Constitutionality—"Malt Beverages."*—The object of section 23½ of the act of Assembly approved March 12, 1908, commonly called the "Byrd Liquor Law" was to regulate and control the sale and distribution of the by-products of the brewry commonly known as "malt beverage," sometimes called "Small Brew" and "Near Beer." The legislature clearly has the power to enact such a statute, as well under the comprehensive provisions of section 62 of the Constitution as under the general police powers of the State, and its provisions are not oppressive or unreasonable. Whether such a statute is wise and proper, or not, is a question for the legislature, and not for the courts to determine.

2. INTOXICATING LIQUORS—*Sale—Regulation—Police Power.*—The regulation of the sale of intoxicating liquors is completely within the police power of the State, and may be exercised in such manner as the legislature deem proper. It may be entirely prohibited, or such restraints may be placed as the legislature thinks wise, without supervision or control by the courts. If, for the purpose of preventing evasion, or the fostering of an appetite for stronger liquors, the legislature deem it wise to forbid the sale of any alcoholic admixture, by whatever name it may be called, it has ample power to do so.

3. INTOXICATING LIQUORS—*Sale—Regulation—Police Power—Constitutional Law.*—The regulation of the sale of intoxicating liquors is a police regulation, and the power of the State over such regulations is supreme. Section 23½ of the "Byrd Liquor Law" is not, therefore, in conflict with amendment fourteen of the Constitution of the United States, nor of any other provision of said Constitution.

4. CONSTITUTIONAL LAW—*Statutes—Powers of Legislature.*—The power of the legislature of the State is supreme except so far as it is restrained by the State or Federal Constitution, and even in case of doubt as to the power, all doubts are to be resolved in favor of

the existence of the power. The courts have no power to de-
clare an act unconstitutional unless it is so clearly and plainly
so that there can be no doubt on the subject.

5. CONSTITUTIONAL LAW—*Class Legislation—Byrd Liquor Law.*—Sec-
tion 23½ of the "Byrd Liquor Law" is entirely consonant with
the whole enactment, and is aimed at the regulation and control
of the sale of intoxicating liquors, and its purpose was not to
discriminate in favor of a few persons against the other mem-
bers of the community.

Error to a judgment of the Circuit Court of Frederick county
in the case of *Commonwealth* v. *Henry,* and to a judgment of
the Circuit Court of Giles county in the case of *Commonwealth*
v. *Shannon.*. In each case the Commonwealth assigns error.

*Reversed.*

The opinion states the case. Section 23½ of the "Byrd
Liquor Law" is as follows:

*"Meaning of 'malt beverage'; license for manufacture of
and the sale of some; bottles, how marked; fine for violation of
provision.*

"23½. That 'malt beverage,' within the meaning of this sec-
tion, shall be construed to be the product of a brewing plant, or
brewery, and shall, as to its composition, comply with the stand-
ards now or as may hereafter be prescribed by the pure food
commissioner of the United States, but shall be non-intoxicat-
ing, and in no event contain in excess of two and one-quarter
*per cent.* in volume of alcohol.

"No person, firm, or corporation shall manufacture 'malt
beverage,' as herein defined, except subject to the provisions
of this act.

" 'Malt beverage' shall be manufactured only by some per-
son, firm or corporation having a manufacturer's malt liquor
license, and who shall, before manufacturing the same, pay an
additional special license tax of two hundred and fifty dollars
($250.00) per year and execute a bond in the penalty of ten
thousand dollars ($10,000) before and with security (either

personal or corporate) approved by the judge of the circuit or corporation court of the county or city in which such manufacturing is proposed to be done; the condition of said bond shall be to faithfully comply with the provisions of this act.

" 'Malt beverage' shall be sold by the manufacturer direct to the consumer (not to be drunk where sold) and in quantities of not less than one-half dozen bottles, nor more than four dozen bottles at any one time, and shall not be sold or offered for sale by any other person, firm or corporation. 'Malt beverage' shall be sold only in bottles in which shall. be blown, in letters at least one-half inch in height, the name and address of the manufacturer, and the words 'malt beverage.' No person, firm, or corporation shall place in such bottles and sell or otherwise transfer any liquid containing alcohol in excess of two and one-quarter *per cent.* in volume.

"Any person violating any of the provisions of this section shall, upon conviction thereof, be fined not less than five hundred dollars nor more than one thousand dollars, or, in the discretion of the jury, confined in jail for not less than three months nor more than twelve months for each offense."

*Wm. A. Anderson, Attorney General,* and *R. M. Ward,* for the Commonwealth.

*R. T. Barton* and *L. O. Wendenburg,* for R. M. Henry.

*McCormick, Henson & Brown,* for Charlie Shannon.

Cardwell, J., delivered the opinion of the court.

These two cases will be considered together because they both involve the same general question.

In the first-named case the defendant in error, H. M. Henry, was arrested on the 9th day of September, 1908, upon a warrant of the police justice of the city of Winchester, charging

him with the sale of "malt beverage," in violation of the pro-visions of section 23½ of chapter 189 of the act of Assembly approved March 12, 1908 (Acts 1908, p. 275), now com-monly known as the "Byrd Liquor Law."

Upon the hearing of the warrant Henry was convicted and fined, the judgment of the justice being as follows: "Judg-ment on the 9th day of September, 1908. The defendant, Robert M. Henry, is found guilty upon the testimony and oath of S. A. Seabright, and the said R. M. Henry pleading guilty, and it is adjudged that he pay a fine of five hundred dollars."

From this judgment Henry immediately appealed to the Cor-poration Court of the city of Winchester, and was recognized in the sum of $600, with surety, to appear on the first day of the next term of that court, which was to convene on September 21, 1908. His appeal was docketed in the corporation court, and afterwards Henry appeared with his surety and the latter asked that he be discharged from his suretyship on the said recogniz-ance executed by Henry before the justice, which was accord-ingly done; and thereupon Henry was placed in the custody of the sergeant of the city of Winchester.

Immediately upon the entry of the order committing him to the custody of the sergeant, the sergeant was served with a writ of *habeas corpus,* issued by the Honorable T. W. Harrison, judge of the Circuit Court of Frederick county, upon the pe-tition of Henry himself.

In the petition Henry sets out, among other things, that he had never sold, though he was charged with selling, something called "malt beverage," but that he had sold by the bottle, and to be drank at the place where sold, a product called "Small Brew," and that this is substantially the same product under a different name; that he had not a manufacturer's license and was not a brewer; and that the bottles in which he sold "Small Brew" had not blown upon them the words "malt beverage," or the name or address of the manufacturer in letters at least one and a half inches in height. Having admitted the violation of

section 23½ of the "Byrd Liquor Law," Henry based his application for a writ of *habeas corpus* upon the claim that said section is unconstitutional.

Upon this petition the judge of the circuit court issued his writ, and immediately Henry was brought before him and the hearing adjourned until September 26, 1908. In the meanwhile the prisoner was released on his own recognizance, formal return of the writ having been made by the city sergeant, showing that Henry was legally and by due process of law in the custody of that officer. Whereupon the Commonwealth, by its attorney, excepted to the petition upon which the writ of *habeas corpus* was issued, upon the ground that it did not show probable cause to believe that Henry was detained without lawful authority, and moved the court to dismiss the writ and remand Henry to the Corporation Court of Winchester to be there dealt with according to law. Determination of this motion was deferred by the court until it should be ready to pass upon the motion which was then made by the prisoner to be discharged from custody; whereupon the Commonwealth, by its attorney, moved to postpone the hearing upon said motion for such reasonable time, to be fixed by the judge, as to allow the Commonwealth time in which to give notice and secure and file affidavits in rebuttal of certain averments of fact alleged in the petition, and especially to prove that the beverage alleged in the warrant of arrest and admitted in the petition to have been sold by Henry in violation of section 23½ was in some cases intoxicating, even if it did not contain in excess of 2¼ *per cent.* of alcohol; but upon the objection of the prisoner, Henry, the court overruled both motions, being of opinion that the testimony desired to be secured was not competent, and refused to allow any postponement of the hearing upon the petition and his motion to be discharged from custody.

The motion of the Commonwealth to remand the prisoner to the corporation court, to be there dealt with according to law, as prayed in the return of the city sergeant, and the counter-mo-

tion of the prisoner to be discharged from custody, as prayed in his petition for a writ of *habeas corpus,* were on September 26, 1908, fully argued by counsel, and the order to which this writ of error was awarded, discharging the prisoner from the custody of the sergeant of the corporation court, was entered, on the ground (as set out in the written opinion of the judge of the circuit court filed as a part of the order) that section 23½ of the "Byrd Liquor Law" is oppressive and unreasonable, and therefore unconstitutional.

The sole question, therefore, for our determination is whether or not section 23½ of the "Byrd Liquor Law" is valid and constitutional.

The reasoning of the learned judge for holding section 23½ unconstitutional is succinctly stated in the conclusion of his opinion as follows: "I regard the legislation as bearing upon a particular, defined type of harmless malt product, which must be construed in relation to the legislative treatment accorded other forms of malt liquor. So viewed, I regard the prohibition and regulation imposed upon this particular type and brand to the last degree oppressive and unreasonable, and that, therefore, the law is unconstitutional."

The purpose of the act of the legislature, commonly known as the "Byrd Liquor Law," is in the title of the act declared to be "to define and regulate the sale, distribution, rectifying, manufacture and distilling of intoxicating liquors and malt beverages, and to impose a license tax thereon," etc. The act first defines what shall be deemed ardent spirits, and specifically names whiskey, brandy, beer, etc., as included therein, because of the fact that these liquors contain a percentage of alcohol sufficient to produce intoxication if a sufficient quantity is taken. Section 23½ was designed to regulate and control the sale and distribution of the by-products of the brewery commonly known as "malt beverage"; by whom it may be manufactured and sold; it being provided that "malt beverage" shall be sold by the manufacturer only to the customer, not to be drank where sold,

and in quantities of not less than one-half dozen bottles nor more than four dozen bottles at any one time, and that it shall not be sold or offered for sale by any other person, firm of cor-' poration; that "malt beverage" shall be sold only in bottles in which shall be blown in letters at least one-half an inch in height the name and address of the manufacturer, and the words "malt beverage"; and that no person, firm or corpora- tion shall place in such bottles and sell, or otherwise transfer, any liquid containing alcohol in excess of 2¼ *per cent.* in volume. The penalty fixed for violating any of the provisions of the section is a fine of not less than $500 nor more than $1,000, or, in the discretion of the jury, confinement in jail for not less than three nor more than twelve months for each offense.

"Malt Beverage," "Small Brew," and "Near Beer," are, as it would seem, synonymous terms, and are used to designate a class of beer, the sale and distribution of which is sought to be regulated and controlled by section 23½ of the "Byrd Liquor Law," and in that act are put among the class of "mixtures, preparations and liquids" in which alcohol appears in varying proportions with other ingredients, and which may or may not be used as beverage, or may or may not contain alcohol in such proportion with the other ingredients that the stomach can bear enough of the mixture to produce intoxication, malt liquors being classified as within or without the ardent spirits class, ac- cording as they will or will not produce intoxication. Doubt- less the legislature took cognizance of the well-known fact that the minimum *per cent.* of alcohol in what is commonly known as beer is 2¼; and that even this, the weakest form of beer, had been found to be intoxicating, and on this account arbitrarily fixed upon this percentage as the differential between beer and the class of "near beer," and gave to the latter class the name of "malt beverage." Why it should have been so denominated is immaterial.

Section 23½ was intended to prescribe regualtions for the

manufacture and sale of "malt beverage," which it is declared shall be "non-intoxicating and in no event contain in excess of 2¼ *per cent.* in volume of alcohol" and to remove this class of malt liquors from the operation of the words "all other intoxicating liquors" found in section 1 of the act. A fine of not less than five hundred dollars nor more than one thousand dollars, or in the discretion of the jury confinement in jail not less than three nor more than twelve months, for each offense is imposed upon any person violating the provisions of this section.

The question for our determination is whether or not the legislature, in enacting this section, exceeded the police power of the State.

There can be no question that among the police powers of the State, and especially under the provisions of section 62 of the Constitution, the legislature has the power to regulate the traffic in intoxicating liquors, not only because it is inherently harmful, but by way of preventing an abuse if the privilege is granted.

The learned judge below seems to have based, in a large degree at least, his conclusion that section 23½ of the act is unconstitutional, upon the assumed harmlessness of the traffic in "malt beverages"; but this assumption ignores the obvious fact that "malt beverage" is not the name of a particular brand of non-intoxicating and unadulterated malt liquor, but the generic name of a large variety of malt liquors, all of which are permitted to contain a percentage of alcohol, and some of which may be intoxicating and unwholesome; and that the object of the section is to allow the manufacture of the pure and non-intoxicating malt beverages, and to punish the sale of the unwholesome and intoxicating kinds of malt beverages; and further ignores the well settled doctrine that the traffic in alcoholic drinks, being peculiarly liable to abuse, is peculiarly a subject for the exercise of the general police powers of the State."

Section 62 of the Constitution is: "The General Assembly

shall have full power to enact local option or dispensary laws, or any other law controlling, regulating or prohibiting the manufacture or sale of intoxicating liquors."

Section 23½ of the "Byrd Liquor Law" seems to us to be clearly within the comprehensive provisions of this section of the Constitution, as well as within the general police powers of the State. Whether the provisions of that section are wise and proper or not is not for the courts to determine, as it is a question for the legislature. *Prison Association* v. *Ashby,* 93 Va. 670, 25 S. E. 893; *Huckleys* v. *Childrey,* 135 U. S. 662, 34 L. Ed. 304, 10 Sup. Ct. 972.

When we read section 23½ together with every section of the "Byrd Liquor Law," it cannot be questioned that it was the object of the legislature to restrict the use of intoxicants as a baverage. In no section of the act is it sought to prohibit or regulate the manufacture or sale of any article of food or commerce which is not commonly used as a beverage and which does not contain alcohol as a distinguishing feature.

We shall not attempt to go into any refinement of distinction between malt beverages which will produce intoxication and malt beverages which will not produce that result. Suffice it to say that if the legislature saw fit to regulate and control the manufacture and sale of malt beverages containing alcohol, but less than 2¼ *per cent.,* so long as the right to do so remains within the police powers of the State, whether the regulation is satisfactory or not, the reasons therefor address themselves exclusively to the legislative wisdom.

It can be readily seen that unless some provision was made in the "Byrd Liquor Law" regulating and controlling the manufacture and sale of malt beverages, at least some of those engaged in the saloon business would close their doors as a saloon and open them as malt-liquor places, and under the guise of doing a lawful business would engage in the illicit sale of ardent spirits. This has been the experience elsewhere, as clearly appears from the reported decisions of the courts of other States,

and it is a matter of common knowledge that it has recently been the experience in Virginia.

To place the traffic in malt beverages within the police power of the State it is not essential, we think, that its harmfulness should be inherent in the article dealt in, as traffic in a harmless article may be regulated if regulation be expedient, so as to prevent it from becoming harmful to the public health and morals. The object of this legislation (section 23½), as already remarked, is to limit the use of intoxicants, and there is no indication anywhere in the "Byrd Liquor Law," from its title to its conclusion, that the legislature deemed harmless the traffic in any kind of alcoholic beverages; on the contrary, there are the strongest indications that the legislature deemed the traffic in beer, by whatever name called, as especially likely to be harmful to the public, if not regulated, and the whole range of alcoholic drinks has been by the act regulated under one provision or another.

In *Farmville* v. *Hatcher,* 101 Va. 319, 43 S. E. 558, 99 Am. St. Rep. 870, 61 L. R. A. 125, and in *Danville* v. *Hatcher,* 101 Va. 523, 44 S. E. 723, the police powers of the legislature, independent of the constitutional provisions, are defined; and in the last-named case the court held as follows: "The regulation of the sale of intoxicating liquors is completely within the police power of the State, and may be exercised in such manner as the legislature deems proper. It may be entirely prohibited, or such restraints may be placed upon it as the legislature thinks wise, without supervision or control by the courts. The traffic is not one of the privileges or immunities of citizenship guaranteed by the Constitution of the United States, or the fourteenth amendment thereof. It may be entirely prohibited; and its regulation, when permitted, is absolutely within the discretion of the several States. These principles are sustained by the Supreme Court of the United States in a long line of decisions, rendered both before and after the adoption of the fourteenth amendment."

"The police powers of the State with reference to the control of intoxicating liquors is to be distinguished from its powers to regulate traffic in other things. It would be different if the business sought to be followed was one of the ordinary pursuits in which all persons are enabled to engage."

"There are also numerous decisions of courts of last resort of the States which uphold the authority of the several States in the exercise of their police power to absolutely control the liquor traffic." See also Cooley on Const. Lim., 120.

As remarked, the restrictions imposed by section 23½ of the "Byrd Liquor Law" were to prevent the abuse which the legislature felt would almost certainly follow if the sale of malt beverages were allowed without imposing restrictions of a stringent character; and this particular form of police regulation has been the subject of numerous decisions in the several States, and the right to impose such restrictions seems not to have been seriously questioned.

Any such legislation by the State is enacted under the police power, the limits of which embrace a very broad field, in which the lawmaking power is clothed with a very broad discretion, the exercise of which the courts will not undertake to control, except in cases where the legislature has plainly transcended its power. Particularly is the police power of the State government far-reaching when it comes to deal with the subject of the regulation and control of the liquor traffic.

A strong illustration of this power is found in the decision of the Supreme Court of the United States in *Mugler* v. *Kansas,* 120 U. S. 623, 31 L. Ed. 205, 8 Sup. Ct. 273.

It is not claimed that it would be competent for the State government to prohibit the sale of an absolutely harmless and nutritious article of food, which contains no alcohol or other dangerous property; but the courts have gone very far in sustaining restrictive legislation in reference to cider, wines, malt liquors, and other beverages which usually contain considerable quantities of alcohol, but which may, and often do, contain such

a small percentage of alcohol as to be absolutely non-intoxicat-ing.

The Supreme Court of Massachusetts, in *Commonwealth* v. *Dean,* 14 Gray, 99, held that under a statute which made no distinction between fermented and unfermented cider, but provided that "cider and all wines shall be considered intoxicating liquors within the meaning of this act," an averment "of the sale of intoxicating liquor" was sustained by proof of the sale of unfermented cider.

The Supreme Court of Rhode Island, in *State* v. *Guinness,* 16 R. I. 401, 16 Atl. 910, sustained a prosecution under a statute of that State which prescribed an artificial definition, and provided that any liquor which contained more than two *per cent.,* by weight, of alcohol should be included in the term "intoxicating liquors," without proof that the liquors sold were actually intoxicating. The opinion says: "The words do not purport to change the nature of things and make liquors intoxicating which are not intoxicating, but simply enact that the words 'intoxicating liquors,' where used in the act, shall be deemed to include any liquor or mixture of liquors which shall contain more than two *per cent.,* by weight, of alcohol, whether intoxicating or not. It may be that the legislature thought that the sale of such liquors would foster an appetite for stronger liquors and should be stopped for that reason; or it may be that they thought that the establishment of such a percentage would make it easier to enforce the law as a law to suppress the traffic in intoxicants by making evasion more difficult. We think that in either view the enactment is constitutional as an exercise of police power." See also *Commonwealth* v. *Goodwin,* 109 Va. 828, 64 S. E. 54, and cases there cited.

The law on the subject is strongly and fairly stated in Freund on Police Power, sec. 32, as follows: "Some courts have said that the legislative determination that some substance or mixture is intoxicating or unwholesome is conclusive. But such a statement cannot be accepted without qualification. Alcohol

is, as a matter of fact, intoxicating if taken in sufficient quantity. To cut off controversies as to the intoxicating quality of different kinds of drinks the legislature may define as intoxicating all liquors containing a certain percentage of alcohol. If such liquors when consumed to excess produce in normal cases intoxication, they are very properly described as intoxicating, although they may not have that effect in such particular case. Where the alcohol is so much diluted as to be harmless a legislative fiat will not make it intoxicating. But if the legislature, for the purpose of preventing evasion or in order that an appetite for stronger liquors may not be fostered, deems it wise or necessary to forbid any alcoholic admixture, it may do so, since it thereby interferes at most with the gratification of a pleasure."

In the recent case of *Campbell* v. *City of Thomasville,* decided by the Court of Appeals of Georgia, and reported in 64 S. E. 815, there was under review an ordinance adopted by the city of Thomasville, under the general welfare clause of its charter, designed to regulate the sale of "near beer," and it was held, that "the selling of 'near beer' is a business, which, from its very nature, admits of strict regulation under the police power. It stands legitimately in a different class from the business of selling drugs, soda water and similar liquids. Regulations may be upheld as applied to this occupation which would be arbitrary and unreasonable if there were an attempt to apply them to any other business." In the course of the opinion it is said: "The very possibility which 'near beer' and imitations and substitutes for beer and other intoxicating liquors afford toward the palming off of real beer and actual intoxicating liquors under that guise, as well as of selling beverages dangerous to the public health, places the business of dealing in them under the guardianship and control of the police power. Therefore, while the municipalities in this State, under their general welfare clauses and in the absence of broader and express delegation of authority, may, as to the business of dealing in the class of beverages here under discussion, regulate only,

and not prohibit, and while the regulation must be reasonable, and not arbitrary, yet regulations may be sustained as being reasonable, as applied to such occupations, which would be void for unreasonableness if they were made to relate to callings of a different nature." Citing a long list of decided cases as being in point.

Further on it is said: "Fundamentally the right to regulate the sale of intoxicating liquors differs only in degree from the right to regulate imitations and substitutes for such beverages, and especially those which approach closely to the border line of being intoxicating. In general terms it may be said that municipal corporations, in dealing with the sale of 'near beer' and like beverages, may, under the general welfare clause, adopt all fair and appropriate regulations which would tend to prevent the business from becoming a nuisance by attracting together idle or disorderly persons, or by otherwise tending to disturb the public peace and tranquility, or from becoming a menace to health by reason of the sale of impure or unwholesome liquors, or from becoming a means of violating the law as to the sale or keeping of intoxicating liquors."

Again it is said in the opinion: "The argument that, since 'near beer' is not an intoxicating liquor, dealers in it should stand on the same footing as dealers in soda water and other similar beverages, well comports with the zeal and partizanship which is to be expected of counsel in the case; but we would stultify ourselves if we did not recognize an essential distinction and a well-marked difference between the two classes. Both businesses are in a certain sense alike legitimate; but there are many varieties of legitimate businesses. An occupation may be lawful and yet may be neither useful nor necessary—in fact, may have a harmful tendency."

In the light of the authorities cited it seems clear to us that the legislation here in question comes within the legitimate domain of the police power of the State, and, therefore, there is nothing in the contention of defendant in error that said section

23½ is in conflict with section 8 of the Constitution of Virginia, which provides, that "no man shall be deprived of his life or liberty except by the law of the land or the judgment of his peers."

We are further of opinion that there is still less force in the contention that the legislation in question is in conflict with the fourteenth amendment to the Constitution of the United States, since section 23½ of the "Byrd Liquor Law" was passed in the legitimate exercise of the police power of the State, and, therefore, the fourteenth amendment to the Constitution of the United States has no application whatever.

A great number of cases might be cited in support of this view, but we shall be content with the citation of the following, which are to the effect that "The power of the State over police regulations is supreme. The legislature determines the necessity for, and the courts the proper subjects of its exercise: *Slaughter House Cases,* 83 U. S. 394, 21 L. E. 394; *Commonwealth* v. *Alger,* 7 Cush. (Mass.) 84; *Taunton* v. *Taylor,* 116 Mass. 254; *Boston Beer Co.* v. *Massachusetts,* 97 U. S. 25, 24 L. Ed. 989; *Barbier* v. *Connolly,* 113 U. S. 27, 28 L. Ed. 923, 5 Sup. Ct. 357.

In the last-named case the opinion says: "But neither the amendment (14th), broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the State, sometimes termed its 'police power,' to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the State, develop its resources and add to its wealth and prosperity."

In *Re Rahrer,* 140 U. S. 554, 35 L. Ed. 572, 11 Sup. Ct. 866, the opinion by Chief Justice Fuller says: "The power of the State to impose restraints and burdens upon persons and property in conservation and promotion of the public health, good order, and prosperity, is a power originally and always belonging to the States, not surrendered by them to the general gov-

ernment, nor directly restrained by the Constitution of the United States, and essentially exclusive. And this court has uniformly recognized State legislation, legitimately for police purposes, as not, in the sense of the Constitution, necessarily infringing upon any right which has been confided expressly or by implication to the national government. The fourteenth amendment, in forbidding a State to make or enforce any law abridging the privileges and immunities of citizens of the United States, or to deprive any person of life, liberty or property without due process of law, or to deny any person within its jurisdiction the equal protection of the laws, did not invest, and did not attempt to invest, Congress with power to legislate upon subjects which are within the domain of State legislation."

Nor is there anything in the contention that section 23½ of the "Byrd Liquor Law" should be held to be in excess of the powers conferred by section 62 of the Constitution of Virginia. That section of the Constitution was not designed to limit the police power of the State, but to enlarge it, so as to give to the legislature the widest discretion in the selection of the means, mode and method of controlling, regulating or prohibiting the manufacture or sale of intoxicating liquors.

There are, perhaps, seeming inconsistencies in some of the provisions of the statute under consideration, but such inconsistencies, if such there be, are more properly to be dealt with by the legislature than by the courts. The power of the General Assembly is supreme, unless restricted by the State or Federal Constitution, and even if there be doubt as to the power, that doubt is to be solved in favor of the right to exercise the power. In other words, "We can declare an act of the General Assembly void only when such act, clearly and plainly, violates the Constitution, and in such manner as to leave no doubt or hesitation on our minds." *Commonwealth* v. *Moore & Goodson,* 25 Gratt. 951; *Button* v. *State Corp. Com.,* 105 Va. 634, 54 S. E. 769, and the authorities there cited.

The argument of counsel, that the legislature, in enacting

section 23½ of the statute, under the guise of regulating the liquor traffic in this State, sought to do by indirection that which it could not do directly, namely, discriminate in favor of a few persons as against the other members of the community, has nothing in the record upon which to rest.  That section of the statute is entirely consonant with the manifest intention of the entire enactment, and aimed at the regulation and control of the sale of intoxicating liquors in this State, and the purpose to discriminate in favor of a few persons as against other members of the community is nowhere apparent.

For the foregoing reasons and in view of the authorities cited, we are of opinion that the judgment of the Circuit Court of Frederick county, holding section 23½ of the act of the General Assembly above mentioned to be unconstitutional and void, is erroneous; and the said judgment will be reversed and annulled, and this court will proceed to enter such judgment as the circuit court should have entered.

In the second of the above-named cases the defendant in error, Charlie Shannon, was arrested, tried, convicted and fined $500 by a justice of the peace of the county of Giles, upon a warrant charging him with unlawfully selling and delivering to one Joe Hight a certain mixture, preparation and liquid called "Pocahontas malt," which was the product of a brewing plant or brewery, and which in fact was "malt beverage" as defined by the law of the State of Virginia, the said Shannon not being the manufacturer of said malt beverage.  In other words, that the said Shannon had been guilty of the violation of section 23½ of the "Byrd Liquor Law."

From the judgment of the justice Shannon took an appeal to the Circuit Court of Giles county, which court, a jury being waived, heard and tried the case on May 10, 1909, and thereupon found the defendant not guilty, upon the ground "that section 23½ of the Byrd Law, which prohibits the sale of such a beverage as the beverage in this case has proven to be, violates both the State and the Federal Constitution, as contended for by the defendant."

It appears from the transcript of the record before us that every fact necessary to a conviction of Shannon of the violation of the provisions of section 23½ of the "Byrd Liquor Law" was proven. In fact, Shannon admitted the violation of the statute, and relied upon the defense that the said statute was unconstitutional and void, as was held by the learned judge of the circuit court.

For the reasons stated, and in view of the authorities cited in the above discussion of the case of *Commonwealth* v. *R. M. Henry,* we are of opinion that the Circuit Court of Giles county erred in its judgment that section 23½ of the act of the General Assembly above mentioned is unconstitutional and void; and the said judgment will be reversed and annulled, and this court will proceed to enter such judgment as the circuit court should have entered.

*Reversed.*