## Richmond.

## PIRKEY V. GRUBB'S EXECUTOR AND OTHERS.

### November 15, 1917.

1. CHARITIES — *County as Donee — Enabling Act — Donation.*—The General Assembly of Virginia passed an act (Acts 1912, p. 111), providing that the county of Rockingham should be capable, through its board of supervisors, "to accept any donation or any trust made for benevolent or charitable objects of a public nature, not religious or sectarian, within its external territorial limits, and to perform such conditions and execute such trusts as may be imposed upon it by the terms of the instrument by which the donation is made or the trust is created." Subsequent to this act a testator by his will directed that his estate should be converted into money and gave the proceeds to the county of Rockingham on condition that said county should forever pay interest, at the rate of four per cent. per annum, on the amount received by it, to the Rockingham Memorial Hospital, the hospital to apply the interest or income to the support or maintenance in its hospital of indigent patients from the county of Rockingham and the town of Harrisonburg. *Held:* That though this bequest might not be technically a trust, it was a donation to the county, upon condition, while the interest thereon when paid by the county to the hospital constituted a trust fund of which the Rockingham Memorial Hospital was the trustee. The general purpose of the act is the aid of benevolent and charitable objects of a public character within the territorial limits of the county of Rockingham, and the county is enabled by the act to effectuate this object, either by the acceptance of donations or the execution of trusts committed to it.

2. CHARITIES—*County as Donee—Enabling Act—Donation.*—In the instant case, therefore, there was a valid enabling act, the provisions of which have been carefully observed by the testator in his commendable efforts to provide a beneficent public charity, coupled with an acceptance of the gift upon the condition attached by the donor thereto, which condition is altogether reasonable in itself and the result of its acceptance is that the taxpayers of the county of Rockingham and town of

Harrisonburg are, to the extent which the fund will provide, relieved of a burden which would otherwise rest upon them.

3. CONSTITUTIONAL LAW—*Power of Legislature.*—The legislature has power to pass an act enabling a county to accept donations or trusts for the benefit of the indigent poor of the county, for it has supreme legislative power except so far as it is restrained by the State or federal Constitution.

4. COUNTIES—*Power of Board of Supervisors—Supervisors Binding Their Successors.*—A board of supervisors may incur an obligation for a proper public purpose, when so authorized by the General Assembly, which will bind its successors indefinitely.

5. CHARITIES—*Benevolent Object of a Public Character.*—The establishment and maintenance of hospitals by counties and towns is regarded in Virginia as a benevolent object of a public character; this is manifest from sections 1719 and 1720 of the Code of 1904, authorizing such hospitals and their maintenance out of the public funds; and the maintenance of the indigent poor is also a benevolent or charitable object of a public character.

Appeal from a decree of the Circuit Court of Shenandoah county. Decree in favor of one of the defendants. Another of the defendants appeals.

*Affirmed.*

The opinion states the case.

*Charles A. Hammer* and *D. O. Dechert,* for the plaintiff in error.

*Conrad & Conrad* and *Sipe & Harris,* for the defendants in error.

PRENTIS, J., delivered the opinion of the court.

At its 1912 session, the General Assembly of Virginia passed an act in these words:

"An act to permit the county of Rockingham, through its board of supervisors, to accept donations and trusts made for benevolent or charitable objects of a public character

within its territorial limits, and to perform such conditions and execute such trusts as may be connected with the same. Approved February 29, 1912.

"Whereas a citizen of this Commonwealth has manifested a desire by his last will and testament to bestow his estate, or a part thereof, upon the county of Rockingham, on condition that said county shall forever pay interest on the amount received by it to the Rockingham Memorial Hospital, a corporation without capital stock, incorporated to establish and conduct a hospital in the town of Harrisonburg, in the said county, the interest so paid to be applied by the hospital authorities to the discharge of the expenses in the hospital of indigent patients from the county of Rockingham and the town of Harrisonburg; and some doubt existing as to the legal competency of a county of this State to accept a gift of the sort proposed; and it being deemed to be in accordance with sound public policy and the public good to sanction and permit the acceptance of a gift of the sort so proposed, or others of a like or similar character or object; therefore,

"1. Be it enacted by the General Assembly of Virginia, That the county of Rockingham shall be capable, through its board of supervisors, to accept any donation or any trust made for benevolent or charitable objects of a public nature, not religious or sectarian, within its external territorial limits, and to perform such conditions and execute such trusts as may be imposed upon it by the terms of the instrument by which the donation is made or the trust is created.

"No such gift or trust, if accepted by the board of supervisors, shall be declared or held to be void for insufficient designation of the beneficiaries or uncertainty as to the objects thereof, but in all such cases the gift, grant, devise or bequest, as the case may be, shall be valid; and in any case where, under the principles now governing in

courts of equity, the objects or beneficiaries of the donation or trust are so undefined or uncertain as not to admit of specific enforcement or administration by a court of equity, the same, if accepted by the county authorities, shall be administered or executed so as to effectuate as nearly as may be the intent or object of the donor or founder." (Acts 1912, p. 111).

On the 11th day of May, 1912, R. M. Grubb made his last will and testament, the pertinent parts of which are:

"I, R. M. Grubb, of the county of Rockingham, in the State of Virginia, do make, publish and declare this to be my last will and testament:

"I will and direct that all my property, both real and personal, shall be sold by my executor at public sale to the highest bidder, and that all my just debts and funeral expenses be paid as soon after my decease as practicable.

"I bequeath an annuity of sixty dollars a year, to be paid semi-annually during her lifetime, to Clementine Thompson, who served faithfully during the last illness of my mother and sister and has since been my housekeeper; this annuity to be paid out of the income of my estate; and as a first charge upon it, by the Rockingham Memorial Hospital, hereinafter mentioned. * * *

"I give and bequeath all the residue of my estate to the county of Rockingham on condition that said county shall forever pay interest, at the rate of six per centum per annum, on the amount received by it, payable semi-annually to the Rockingham Memorial Hospital, a corporation duly incorporated under the laws of Virginia, now equipping a hospital in the town of Harrisonburg, the said hospital to pay the annuity aforesaid to Clementine Thompson during her lifetime out of the interest or income so received by it, and apply the residue of such interest or income to the support or maintenance in its hospital of indigent patients from the county of Rockingham and the town of Harrison-

burg, the hospital authorities to provide by means of such by-laws, rules and regulations as they may see fit to adopt the benefits of this fund, it being my desire and intent, as far as my substance will suffice, to provide the means of furnishing hospital advantages to indigent persons of the county and town who may have need of the same, leaving it to the hospital authorities to ascertain or determine the individual beneficiaries of this fund. The benefits of this fund, however, to be apportioned between indigent patients from the county, and indigent patients from the town in proportion to population.

"In case the county of Rockingham should decline the bequest made by this, my will, or the same should fail for any cause, then and in that event, I give and bequeath the whole of my estate, left after the payment of my debts and funeral expenses, and the satisfaction of the provisions for the cemetery fence, to the said The Rockingham Memorial Hospital, the same to be placed at interest in the safest and best paying securities and the interest or income to be applied as hereinbefore provided.

"And in the event that the bequests hereinbefore made to The Rockingham Memorial (that is the bequest of the interest to be paid by the county of Rockingham, or, in case that should fail, the bequest of my whole estate made in the clause immediately preceding this one) for the uses specified should fail or be defeated on the ground of uncertainty, as to the individual beneficiaries, or for any other cause or reason whatsoever, then and in that event, I give and bequeath the whole of my estate left after the payment of my debts and funeral expenses, and the satisfaction of the provisions for the cemetery fence aforesaid, to the said The Rockingham Memorial Hospital without condition, limitation or qualification of any sort whatsoever, except that the said corporation shall pay the annuity aforesaid to Clementine Thompson.

*        *        *        *        *

"I hereby revoke all words or clauses in this will giving any part of the principal of my estate to the Rockingham Memorial Hospital."

### *Codicil to the Within Will.*

"I hereby alter the conditions of the bequest to the county and limit the rate of interest to four per centum per annum on the entire amount which it may receive.

"In case that the county of Rockingham should refuse the gift of the residue of my estate after paying annuity to Clementine Thompson and the bequest to the cemetery, I then give the same to Miss Fannie Pirkey, daughter of Albert and Amanda *Amanda* Pirkey, of near Massanutton Springs, in Rockingham county, Va. Provided she pays the two former bequests made in this my will."

The testator died in January, 1913. On the 7th day of April, 1914, the board of supervisors of Rockingham county, against the protest of counsel for the appellant, Fannie V. Pirkey, passed a resolution in these words:

"It appearing to the board that the greater portion of the Grubb estate is in the hands of the executor ready for disbursement and that Dr. J. M. Beidler, the said executor of R. M. Grubb, deceased, is desirous of knowing whether the board is or is not going to *except* the legacy or trust to the county of Rockingham under said will, and the board having heard the arguments of counsel passed the following resolution: be it resolved that the board of supervisors of Rockingham county does hereby signify its intention and willingness to accept and does hereby accept the gift or bequest to said county of Rockingham, under the will of R. M. Grubb, deceased, subject to the charges, conditions and limitations contained in said will and codicils thereto."

Whereupon, the executor filed a bill, making the interested parties defendants, in which he alleged that he had converted the estate into cash and was ready to pay the amount over to those entitled to receive it, but that inasmuch as the appellant denied the validity of the bequest to the county of Rockingham and the capacity of the county to take the gift made to it under the will, he asked the aid and guidance of the court, a judicial determination of the rights of the interested parties, and special directions as to the disposition of the remainder of the estate in his hands. Each of the defendants answered the bill, and the appellant, Fannie V. Pirkey, filed a demurrer and an answer, which she asked to be treated as a cross-bill, and prayed therein that she be declared by decree entitled to take the estate. Upon this state of the pleadings, there being no dispute as to the facts, the court overruled the demurrer, denied the relief prayed for in the cross-bill, dismissed it, and directed the executor to pay the annuity to Clementine Thompson from the date of decedent's death to the time of payment, and to pay over the residue and such further sums as might be thereafter received by him to the county of Rockingham, after satisfying the costs and proper attorneys' fees; and further directed that, in accordance with the terms of the bequest, the county forever pay to the Rockingham Memorial Hospital interest on the amount received at the rate of four per centum per annum.

From this decree Fannie V. Pirkey appealed.

The validity of the bequest to the county of Rockingham is to be determined.

The appellant denies that the act approved February 29, 1912, hereinafter called the enabling act, is sufficient to validate the bequest. To epitomize this contention in the language of the appellant's reply brief, "It is not contended by appellant that there is any conflict between the title of the act and the act itself, so far as the enacting clause is

concerned. The real contention is that neither the title nor the enacting clause provides for any transaction such as is described in the preamble, or as is involved in the acceptance of the provisions of the will here in controversy." In support of this contention counsel have quoted many authorities to establish their proposition, that this bequest to the county is not technically a "trust." While this may be true, it is only true subject to the qualification that the people of the county, not the board of supervisors, are the beneficiaries, and the principal of the fund can only be used for some proper public purpose for the benefit of such beneficiaries. Technically the bequest is a donation to the county, upon condition, while the interest thereon when paid by the county to the hospital constitutes a trust fund of which the Rockingham Memorial Hospital is the trustee. The statute, however, both in its title and enacting clause, refers not only to trusts, but also to donations and gifts. The title in express terms indicates its object, and in aid or promotion of that object permits the county of Rockingham "to accept donations * * * made for benevolent or charitable objects of a public character within its territorial limits, and to perform such conditions * * * as may be connected with the same." This deleted quotation from the title omits all reference to "trusts" contained therein, for it also refers to trusts which may be made for the same purpose, and authorizes the county to execute the same. The first paragraph of the enacting clause fully accords with the title, and clearly authorizes the county of Rockingham, "through its board of supervisors, to accept any donation * * * made for benevolent or charitable objects of a public nature, not religious or sectarian, within its external territorial limits, and to perform such conditions * * * as may be imposed upon it by the terms of the instrument by which the donation is made * * *." It is true that the same clause, by the words omitted in the quotation just

made, also authorizes the county to "accept" and "execute" "any trust" that may be imposed upon it by the terms of the instrument by which "the trust is created," but the distinction between trusts and gifts is still clearly maintained.

This distinction is also carefully preserved in the second and last paragraph of the enacting clause, by the use of appropriate and carefully selected language, concluding with the provision that the gift or trust "shall be administered or executed so as to effectuate as nearly as may be the intention or object of the donor or founder," "donor" being precisely the appropriate word to use if the bequest is a gift, and "founder" just the appropriate technical word to be used if the bequest is a trust.

Referring now to the preamble of the act, it is perfectly apparent that it was passed because the legislature had been informed of the purpose of this testator to bestow a part of his estate upon the county of Rockingham, and the preamble refers specifically to this gift or donation at that time contemplated, and recites that it is "deemed to be in accordance with sound public policy and the public good to sanction and permit the acceptance of a gift of the sort so proposed, or others of a like or similar character or object." This preamble clearly indicates that the legislature had been informed of the purpose of the testator to make this identical donation on condition that the county should pay interest on the principal of the amount thereof.

Under these circumstances, it is impossible for us to doubt the manifest intention of the legislature to remove every obstacle which could possibly prevent the accomplishment of the testator's benevolent purpose.

The donation here involved might have been made effective by leaving out of the act all reference to trusts, but it was doubtless suggested that possibly this testator, or some other, might prefer, instead of making a gift to the county, to bequeath his estate to the county in trust for benevolent

and charitable uses, and so passed an act to validate any such bequest in either form.

The general purpose of the act is the aid of benevolent and charitable objects of a public character within the territorial limits of the county of Rockingham, and the county is enabled by the act to effectuate this object, either by the acceptance of donations or the execution of trusts committed to it.

That the legislature had power to pass such an act cannot be doubted, for it has supreme legislative power except so far as it is restrained by the State or federal Constitution. *Henry's Case,* 110 Va. 879, 65 S. E. 570, 26 L. R. A. (N. S.) 883; *Button* v. *State Corporation Commission,* 105 Va. 634, 54 S. E. 769, and cases cited.

That a board of supervisors may incur an obligation for a proper public purpose, when so authorized by the General Assembly, which will bind its successors indefinitely, is also clear, and one instance of this may be found in *Lynchburg* v. *Amherst County,* 115 Va. 600, 80 S. E. 117, where the county of Amherst was held bound by its contract with the city of Lynchburg for one-half the cost of repairs upon the bridge across James river connecting the county with the city, for amounts not exceeding $100 at any one time, although the only authority for this specific obligation was found in the special act which authorized the city and county jointly to make the purchase of the bridge, and "to determine and fix the terms and conditions on which the bridge was to be used."

The purpose of this charity is to provide a fund for the support and maintenance of indigent patients from the county of Rockingham and the town of Harrisonburg in the Rockingham Memorial Hospital. That the establishment and maintenance of hospitals by counties and towns is regarded in Virginia as a benevolent object of a public character, is manifest from sections 1719 and 1720 of the

Code, authorizing such hospitals and their maintenance out of the public funds; and it seems hardly necessary to say that the maintenance of the indigent poor is also a benevolent or charitable object of a public character.

So, then, it seems clear to us that we have here a valid enabling act, the provisions of which have been carefully observed by the testator in his commendable efforts to provide a beneficient public charity, coupled with an acceptance of the gift upon the condition attached by the donor thereto, which condition is altogether reasonable in itself and the result of its acceptance is that the taxpayers of the county of Rockingham and town of Harrisonburg are, to the extent which the fund will provide, relieved of a burden which would otherwise rest upon them.

The briefs indicate great industry and quote many authorities, suggest many difficulties, propound several questiois, but in our view of the case no good purpose would be served by prolonging this discussion, because we are of the opinion that the enabling act furnishes a complete reply to every suggestion and argument which has been or can be made against the validity of the bequest, answers every question raised, solves every doubt which it is possible to suggest, and removes the inquiry from the forum of debate. The controlling question here is whether in view of the enabling act this bequest is valid. As to this we have no doubt whatever, and the decree of the trial court is plainly right.

*Affirmed.*