## Richmond.

### JORDAN'S ADMINISTRATOR AND OTHERS v. RICHMOND HOME FOR LADIES.

March 14, 1907.

1. WILLS—*Misdescription of Legatee—Parol Evidence to Identify.*—Parol evidence of the facts and circumstances surrounding a testator is always admissible to identify a legatee or devisee not precisely described in the will. In the case in judgment the gift was to the "Trustees of the Presbyterian Home for Old Ladies, situated in Richmond, Va." There was no such institution, but the evidence clearly shows that the "Richmond Home for Ladies," a corporation in the city of Richmond, chartered for the purpose of providing a home and gratuitous support for indigent and infirm women, and especially those connected with the Methodist Church, South, and the Presbyterian Church, was the object of the testator's bounty, and it will be permitted to take.

2. WILLS—*Richmond Home for Ladies—Circuit Court Charter—Powers.*—The "Richmond Home for Ladies" is a benevolent business corporation, incorporated in 1883 by the Circuit Court of the city of Richmond, and its charter confers upon it ample power to administer the trust imposed upon it by the will in controversy. At that time the Legislature had power to create such a corporation, or to delegate its authority to the courts, and it did so delegate it by Acts 1866-'67, chapter 129, carried into the Code of 1887 as section 1145. A prior act authorized the chartering of "orphan asylums," "hospitals," and the like, and the later act was intended to be even more comprehensive, and was not restricted to strictly business corporations. Franchises granted thus indirectly by the state are the same in effect as if granted directly by the Legislature.

3. WILLS—*Construction—Life Estate After a Life Estate—Gift Over—Death of Second Life Tenant During Life of First.*—Where specific legacies are given to A and B for life, with remainder in each case to C for life (he being the residuary legatee of the whole estate for life), and after the death of C the whole estate

is given absolutely to X, if C dies in the lifetime of A and B, the whole estate passes at once to X, subject to the life estates in favor of A and B. There is no intestacy as to the residuum of the estate during the lifetime of A and B. Such, on the whole, is the intention of the testator. Words which are omitted by mistake and which are absolutely necessary to effectuate the general intention will be supplied.

4. WILLS—*Residuary Legatee—How Constituted.*—No particular form of words is necessary to constitute a residuary legatee. Any expression is sufficient from which the testator's intention may be discerned that the person designated shall take the surplus. Such words as "rest," "residue," "remainder," are not indispensable to a residuary bequest of personal estate. Nor is it of controlling consequence that the clause is not the last of the disposing provisions, though such is the usual position.

Appeal from a decree in chancery of the Chancery Court of the city of Richmond, in the suit of *McClung's Ex'or* v. *McClung's Heirs and others.* From a decree in favor of defendant, Richmond Home for Ladies, the heirs and distributees of Mary E. McClung, who were also defendants, appeal.

*Affirmed.*

The opinion states the case.

*B. Rand Wellford, Wm. A. Anderson,* and *James E. Edmunds,* for the appellants.

*Coke & Pickrell* and *Christian & Christian,* for the appellees.

WHITTLE, J., delivered the opinion of the Court.

This is a suit in equity, instituted in the Chancery Court of the city of Richmond by the Virginia Trust Company, executor of the will of Mary E. McClung, deceased, against her heirs at law and next of kin, and the "Richmond Home for Ladies" and others, to construe and give effect to testatrix's will.

The text of the will is as follows:

"Sulphur Mines, October 12, 1893.

"This is my will, as follows: I wish the Virginia Safe Deposit and Fidelity Company to act as executors and distribute the interest as I direct.

"First. To Georgie Kenney, as long as she lives unmarried, the interest of $5,000 semi-annually of Sulphur Mines Company's bonds which I hold; if she marries or dies, then the interest goes to J. C. Petty as long as he lives.

"Second. To my old family servant, Margaret Davis, as long as she lives unmarried, the interest of $4,000.00 of Virginia Sulphur Mines Company bonds (8 *per cent*). If she marries or dies, then the interest is to be paid to J. C. Petty as long as he lives.

"All my real estate, house and lot in Covington, Va., tract of land in Alleghany county (The Rich Holes); and three-fourths interest in the Iodine Alum Spring, and 100 acres of land near Long Dale Mines, Alleghany county, also two lots in Lexington, Va., to be sold, as is wise in the opinion of the executors, and the proceeds invested. The interest of this and of all other bonds, stock and whatever property I may be possessed to be given to J. C. Petty as long as he lives, and with the exception of $200 annually to be expended as follows: $150 to keep in good order and repair my section in the Cedar Hill Cemetery, near Covington, Va., in which our family are buried; $50 to be given to the trustees of the Cedar Hill Cemetery for the general improvement of the cemetery. The trustees are requested to attend to the repairs, etc., of my section in the cemetery.

"After the death of Georgia Kenney, Margaret Davis and J. C. Petty, I wish the interest of all the property I leave to be paid annually, except the perpetual fund of $200 for the Cedar Hill Cemetery and my section therein, to be paid to the trustees of the. Presbyterian Home for Old Ladies, situated in Richmond, Va. I further request that $100 be given to Alice Adams and $100 for each Herbert and Goram Adams to be

put on interest to be given them when they are twenty-one years old; and request that Mr. J. C. Petty will see that they have good homes and are well taken care of until they are old enough to take care of themselves. Those that I have left my estate to have been my friends when I was in need of sympathy and kindness after being bereft of all my own dear ones. May God bless and keep them all is the wish and prayer of their friend.

"MARY E. McCLUNG."

In response to certain inquiries submitted by the court the master in chancery returned the following findings:

"1. That there were no such persons as the 'Trustees of the Presbyterian Home for Old Ladies, situated in Richmond, Va.,' but that the testatrix by that description meant the 'Richmond Home for Ladies,' which is a corporation chartered by the Circuit Court of the city of Richmond.

"2. That the 'Richmond Home for Ladies' is capable of taking the bequest made in the will, and that the bequest to it is legal and valid.

"3. That there was no intestacy resulting from the death of J. C. Petty in the lifetime of Georgia Kenney and Margaret Davis; but that at his death 'the annuity to him went to the Home, to open and take in the special annuities to Georgia Kenney and Margaret Davis when those annuities, respectively, shall lapse.'

"4. That the bequest of fifty dollars a year, perpetually, to the trustee of Cedar Hill Cemetery for the general improvement of the cemetery is valid. But that there is an intestacy as to the bequest of $150, to be expended annually to keep testatrix's section in the cemetery in good order and repair; and that 'the $150 *per annum,* being a portion of the residuum of the testatrix's estate' would go to her next of kin."

By the decree under review the Chancery Court overruled exceptions of the appellants to the report of the master on the

first, second and third findings and sustained the exception of the Richmond Home for Ladies to so much of the fourth finding as declares that the bequest of $150 *per annum*, in perpetuity, goes to testatrix's next of kin. The court was of opinion that the bequest was invalid and void; but, with the exception of the accumulation therefrom prior to the death of J. C. Petty (as to which no decision was made), that the income after his death passed to the Richmond Home for Ladies as residuary legatee.

The appellants assign as error the rulings of the court in the particulars indicated.

Upon the first assignment we have no difficulty in agreeing with the Chancery Court that the bequest "to the trustees of the Presbyterian Home for Old Ladies, situated in Richmond, Va., was intended by the testatrix to be made to the defendant, the 'Richmond Home for Ladies,' an institution incorporated in due form of law by an order of the Circuit Court of the city of Richmond, entered on the 28th day of February, 1883."

The well-established rule that parol evidence is admissible to identify the object of a testator's bounty is succinctly stated in the case of *Roy* v. *Rowzie*, 25 Gratt. 604, 605, as follows: "Parol evidence is always admissible and even necessary to lead us to the person or object and subject referred to in a bequest. The court of construction, with the testator's will in hand, looks for the object of his bounty and the thing intended to be given, and expects them to answer precisely the terms of description given of them in the will. Generally they do, and there is no difficulty. Often they do not; and sometimes there are two or more objects or subjects which answer precisely or equally, the description contained in the will. In such cases resort must be had to parol evidence and the surrounding circumstances to show what the testator intended by the expressions which he used; and, almost always, his intention is thus ascertained with sufficient, if not unerring, certainty. If it cannot be, the bequest must then fail of effect; but the court is always reluctant so to

declare. It will not require that the object or subject shall have every ear-mark given to it by the testator. Nay, it may in some respect have different ear-marks, and yet the description contained in the bequest may be sufficient to give it effect. *Falso demonstratio non nocet cum de corpore constat* is a maxim which expresses a rule of construction to which the court has frequent recourse in such cases."

So also the Court of Appeals of New York declared, in the case of *Lefevre v. Lefevre,* 59 N. Y. 440, 442: "A corporation may be designated by its corporate name, by the name by which it is usually or popularly called and known, by a name by which it was known and called by the testator, or by any other name or description by which it can be distinguished from every other corporation; and when any but the corporate name is used the circumstances to enable the court to apply the name or description to a particular corporation and identify it as the body intended, and to distinguish it from all others and bring it within the terms of the will, may, in all cases, be proved by parol."

Tested by these recognized canons in the interpretation of wills the evidence and surrounding circumstances show beyond a reasonable doubt that the Richmond Home for Ladies was intended as the chief object of testatrix's bounty. It appears that her only relatives were collateral kindred, most of whom were strangers to her; and, by fair implication from the language of the will, her relations with such of them as were known to her were not cordial, for she assigns as a reason for excluding them from participation in her estate, that she had left her property to those who were kind to her in her bereavement. It also appears that she was a devoted Presbyterian; and her disposition to make a home in the city of Richmond for ladies of that communion the chief object of her bounty is placed beyond question by the testimony of an intelligent lawyer whom she consulted three years after the date of the will in controversy, with the view of having him redraft her will

so as to make certain changes in the original instrument. Accordingly, in the draft of a will prepared by him at her request, a clause was incorporated carrying out that intention, and a blank space was left for the insertion of the corporate name of the institution—a precaution rendered necessary by the fact that Mrs. McClung was not certain about the name, and was advised of the importance of accuracy in that regard. The draft of the new will was written in the summer of 1896, but Mrs. McClung died the following spring without having executed it. It thus appears that three years after the date of the original will and within less than a year before her death the testatrix manifested an abiding purpose to make the previously designated beneficiary her residuary legatee. The evidence is equally clear that the Richmond Home for Ladies is the only institution in the city of Richmond where Presbyterian ladies are cared for.

The force of the argument, that testatrix could not have intended that institution as the object of her solicitude and bounty because Methodist ladies are likewise within the provisions of the charter and cared for by the Richmond Home for Ladies, is impaired by the facts that the language of the will in that particular is not exclusive, and it is not shown that the testatrix was not apprised of the scope of the charity. Nor can that circumstance be controlling on the question of identification, when it distinctly appears that the institution, in addition to providing a home for Methodist ladies, also furnishes a home (indeed, the only home in the city of Richmond) where Presbyterian ladies, the express objects of testatrix's benefaction, are cared for.

In the case of *McDonough* v. *Murdock,* 15 Howard 564, 14 L. Ed. 732, a legacy was given to the city of Baltimore to be dedicated to a special use, yet the court (at page 728 of 15 How. 14, L. Ed. 732), said: "Nor can we perceive why the designation of the particular use, if within the general objects of the corporation, can affect the result."

In the case of *Roy* v. *Rowzie, supra,* the bequest was to the "Baptist Theological Seminary." It was shown that there was a chartered institution under the name of the "Southern Baptist Theological Seminary," which was the only Baptist Theological Seminary in South Carolina, and the bequest was sustained.

So, in *Trustees* v. *Guthrie,* 86 Va. 125, 10 S. E. 318, 6 L. R. A. 321, a bequest to the Secretary of the Board of Foreign Missions of the Presbyterian Church in the United States, and known as the Southern Presbyterian Church, was held to be sufficiently identified by proof of the fact that there was a chartered institution in North Carolina under the name of the Trustees of the General Assembly of the Presbyterian Church in the United States, with power to receive and administer such funds as were contributed by the Church for foreign and domestic missions, and the education of ministers and the support of aged and infirm ministers.

Having reached the conclusion that the Richmond Home for Ladies has been identified as the object of the testatrix's charity we are next confronted with the question of the capacity in law of that corporation to take the bequest.

The learned commissioner* has submitted with his report a valuable and instructive historical narrative of the constitutional provisions and legislative enactments on the subjects of "Religion," "Churches," "Charities" and "Schools," together with a discriminating discussion of decisions of this court in point, from the foundation of the Commonwealth to the present time.

His review includes, among others, the leading cases of *Gallego's Ex'ors* v. *Attorney-General,* 3 Leigh 487 (decided in 1832), where it was held that a bequest to the Roman Catholic congregation at Richmond was void for uncertainty; *Protestant Episcopal Education Society of Virginia* v. *Churchman's Representatives,* 80 Va. 718 (decided in 1885), sustaining a bequest

---

*Mr. Jackson Guy.

to the trustees of the "Protestant Episcopal Society of Virginia," incorporated, to be used exclusively for educating poor young men for the Episcopal ministry; *Trustees, etc., v. Guthrie,* 86 Va. 125, 10 S. E. 318, 6 L. R. A. 321 (decided in 1889), upholding a bequest to "the Secretary of the Board of Foreign Missions of the Presbyterian Church in the United States"; and, lastly, *Fifield* v. *Van Wyck,* 94 Va. 557, 27 S. E. 446, 64 Am. St. Rep. 745 (decided in 1897), holding a devise "to two trustees, or to the survivor of them . . . in trust for the benefit of the New Jerusalem Church" (Swedenborgian), too vague and indefinite to be enforced by a court of equity. In the latter case the court disapproves the *dicta* in the *Churchman case* and in *Trustee* v. *Guthrie, supra,* adverse to the decision in *Gallego* v. *Attorney-General,* and recognizes and reiterates the principles of that case and the cases which have followed it on the subject of indefinite charities.

We shall confine our observations to a discussion of the concrete question presented by the record, premising only that, in our view of the subject, the purposes for which the Richmond Home for Ladies was incorporated do not bear such relation to any church or religious sect or denomination as to contravene either the letter or spirit of sections 14 and 17 of Article V of the Virginia Constitution of 1869. It is a benevolent business corporation, with a capital stock of not less than $10,000 nor more than $200,000, chartered for the purpose of "establishing and maintaining in the city of Richmond an institution in which indigent and infirm women of respectable character, especially such as are connected with the Methodist Episcopal Church, South, and the Presbyterian Church of the United States, of the said city, may be provided with a comfortable home and support gratuitously, or on such charges as may be prescribed. But aged and infirm women not connected with either of those churches, or with any other church, may be admitted. . . . The chief business to be transacted is the providing and maintaining of a home for such women as may

be admitted into the institution." The charter also provides for making a constitution and by-laws, the appointment of a board of directors, with power to declare and fill vacancies in their board, and also to appoint managers and other officers. In this connection counsel for the appellants make the following concession in their brief: "We have never denied that such powers as are claimed for the Richmond Home for Ladies could have been granted in Virginia by legislative charter; and every Virginia case relied upon by them is a case of a bequest to a corporation incorporated by an act of the state legislature, which vested the corporation with power to take and administer the bequest. Our contention is that no such powers were ever conferred by law upon this appellee, and that no such authority was ever granted to the courts to grant a charter conferring any such powers."

If it can be maintained that it was within the competency of the Circuit Court of the city of Richmond to grant the charter in question there will be no impediment in the way of sustaining the validity of the gift; for the bequest is in furtherance of the express purposes of the corporation, and ample power is conferred upon it to administer the trust, and the amount of the donation is not in excess of the maximum capital allowed by the charter.

A summary of the legislation on the subject of court charters in Virginia will tend to elucidate the state of the law when the Richmond Home for Ladies was incorporated in 1883.

The original statute conferring power upon courts to grant charters of incorporation was passed March 3, 1854, and was limited to charters for mining and manufacturing purposes. On March 11, 1856, the act was so amended as to permit "five or more persons, who shall be desirous to form a company for the purpose of mining and manufacturing, the establishment of a hotel, cemetery, gas-light, water, springs and telegraph companies, orphan asylums, hospitals, academies, libraries, literary and building associations," to apply to the Circuit Court

of the county in which the operations of the company are proposed to be conducted for a charter. By Acts of 1866-'67, chapter 129, the statute was again amended, discontinuing the enumeration of subjects, but still further enlarging the power of the courts, by permitting them to grant charters "for the conduct of any enterprize or business which might be lawfully conducted by an individual or by a body politic or corporate, except to construct a turnpike to be constructed beyond the limits of the county, or a railroad or canal, or to establish a bank of circulation." As indicative of the legislative policy with respect to such charters we quote from the same enactment: "And it shall not be lawful for the General Assembly to grant relief, or to incorporate any company, or to alter or amend the charter of any corporation, provision for which is made in this section, unless application shall first have been made to such . . . court, or to the judge thereof in vacation, and refused." See *Davis* v. *Crighton,* 33 Gratt. 696, where the legislation on this subject is traced and its validity upheld.

As observed the act of March 11, 1856, authorized the courts to grant charters to orphan ayslums and other specified eleemosynary institutions; and, as we have seen, in 1883, when the Richmond Home for Ladies was incorporated, the scope of the enactment had been so enlarged by amendment as to include all enterprises or businesses which might be lawfully conducted by an individual or by a body politic or corporate, with the four exceptions mentioned in the statute. This enactment was carried into section 1145 of the Code of 1887, and that it is sufficiently comprehensive to embrace the Richmond Home for Ladies is conclusively shown by section 1148 of the same chapter of the Code, which declares that "The minimum capital of every such company (except a cemetery company, or a company whose object is purely benevolent, which may have only a nominal capital) shall not be less than $500." But the Richmond Home for Ladies is not only a benevolent institution, but

a business enterprise also, as will clearly appear from an inspection of the charter.

We shall notice briefly the remaining contention in this regard, namely, the denial of the power of the Legislature to confer upon courts authority to grant such charters.

In the recent case of *Button v. State Corporation Commission of Virginia,* 105 Va. 634, 54 S. E. 769, this court in discussing the power of the legislative department, observes: "In a government, such as ours, of reserved powers, it is said the legislative department acknowledges no superiors except the Federal and state constitutions, and its authority to enact laws, unless forbidden by one or the other of those instruments in express terms or by necessary implication, is paramount."

"Franchises granted indirectly by the state through instrumentalities provided by general laws are the same in effect as if the power conferring the same had been exercised directly by the state itself." *Mason v. Harper's Ferry Bridge;* 17 W. Va. 396. See also *Henrico County v. City of Richmond, ante,* p. 282, 55 S. E. 682; 1 Thompson on Corp., sections 36, 110.

Our conclusions that the Richmond Home for Ladies has been identified as the residuary legatee under Mrs. McClung's will, and that its charter of incorporation is valid, constitute a decisive answer to the next assignment of error, that the bequest is too indefinite to be enforced by a court of equity.

The cases of *Churchman v. Churchman's Representatives,* and *Trustees v. Guthrie, supra,* fully sustain that proposition. The criticism of those cases in *Fifield v. Van Wyck* is, not that they were not rightly decided, but that the opinions contain *dicta* contrary to the decisions in *Gallego's Ex'ors v. Attorney-General,* and other Virginia cases. The court in referring to those decisions observes: "The records in each case show, in the opinion of the court, that the bequest was to a corporation and for purposes within the scope of its corporate powers and duties, and distinctly defined." In *Fifield v. Van Wyck* the court held that the evidence was insufficient to connect the

corporation known as the "General Convention of the New Jerusalem in the United States of America" with the object named in the testator's will, and that the devise was, therefore, void for vagueness and uncertainty.

In *Roy* v. *Rowzie, supra*, Judge Moncure, at page 611, says: "A bequest to a corporation, for general purpose of its incorporation, is not indefinite or uncertain in any respect."

Numerous authorities sustaining similar bequests are assembled and reviewed by Judge Burks in his able brief in the *Churchman Case*, 80 Va. 720.

We shall next consider the question of alleged partial intestacy with respect to the income from the trust estate resulting from the death of J. C. Petty previous to that of Georgia Kenney and Margaret Davis.

While that was a contingency which the testatrix did not anticipate, or, at least, did not provide against, it constitutes only a minor incident in the general testamentary plan, and cannot be allowed to thwart the more important design of the testatrix in the disposition of her estate. The prior death of Petty does not affect in any manner the provision made for Georgia Kenney and Margaret Davis; each will receive the annuity given her until marriage or death, and that was what the testatrix wished to effect. As the commissioner justly observes: "To interpret the will so as to make the remainder to the 'Home' not to vest in possession till the death of Georgia Kenney and Margaret Davis, or the survivor of them . . . would be to put a construction upon it that would certainly not carry into effect any meaning that she had in making it. . . . Petty was the life-tenant of the total residuum, which, and in addition the two annuities to Georgia Kenney and Margaret Davis, is given to the Home."

In 2 Lomax on Ex'ors, page 12, section 10, it is said: "Where there are words in a will which have no meaning, or which are contrary to the general meaning of the testator, they will be rejected; and, on the other hand, words omitted by mistake,

and which are absolutely necessary to effectuate the general intention, will be supplied."

"In order to fulfill the manifest general intention of the testator the court will supply such words as, from the general complexion of the will, compared with the situation of the testator, and of the legatees and objects of his bounty, are absolutely necessary to effectuate the purposes and dispositions intended by him." *Idem,* section 13. See also Schouler on Wills, section 477.

In *Meade* v. *Collidge,* 179 N. Y. 386, 72 N. E. 314, a case very similar in its facts to this, the court held: "When death of *cestui que trust* (son) before that of beneficiaries of other trusts (brother and sister), the principal of which was directed to be added upon their (brother and sister) death to his (son), fund does not result in failure to dispose of it although the testator did not expressly provide for such a contingency." The court said: "It is true, of course, that the particular event which has happened is not described in the will, and that we may infer that the testator did not suppose that the son would fail to survive the older lives; but that will not suffice to defeat the evident testamentary scheme." And again: "The condition that they (brother's and sister's trust fund) should severally be added to the son's estate became impossible of performance, and as in itself it was not one essential to, but merely suspensive of, the vesting of the gift, it should be disregarded. If a minor part of the testamentary plan, as I think it to be, it must be subordinated to the effectuation of that plan. We might hold, from the irresistible evidence of the testator's intention, that there was a gift by implication of the trust estates as they fell in; or, perhaps more correctly, that the direction in the seventh and ninth clauses was not an essential condition of a right in the next of kin to take, and that the prior death of the son merely accelerated the vesting of the estates in the members of that class." The next of kin were made residuary devisees.

As was said in *Wright v. Oldham,* 8 Leigh 306, "The will furnishes another among the innumerable instances in which unskilled draughtsmen have used one set of words to provide for many shifting contingencies, and have welded together what ought to have been kept separate and distinct." See also *Hurt v. Brooks,* 89 Va. 500, 16 S. E. 358; 2 Red. Wills, 116, section 5; 2 Williams on Ex'ors, 514 (1087) n.

These authorities sustain the conclusion reached by the commissioner and trial court that Petty's death anterior to that of Georgia Kenney and Margaret Davis did not result in a partial intestacy.

We have already incidentally referred to the "Home" named in the will as the residuary legatee, a fact admitted in the answers of appellants, but denied in their petition for appeal. We are of opinion that the language of the will admits of no other construction.

In *Prison Asso. v. Russell,* 103 Va. 567, 49 S. E. 968, the court says: "No particular form of words is necessary to constitute a residuary legatee; any expression is sufficient from which the testator's intention is discernible that the person designated shall take the surplus. Nor is it of controlling consequence that the clause is not the last of the disposing provisions, though such is the usual position. Woerner's American Law of Administration (2d Ed.), section 462.

"The residue is that part of a testator's estate not otherwise disposed of, hence a general residuary bequest carries with it everything not in terms disposed of, and with such exceptions as are pointed out in connection with the subject of lapsed and void legacies, everything not effectually or well disposed of, as well as lapsed legacies, unless a contrary intent clearly appear from the will. *Idem.*

"Such words as 'rest,' residue,' 'remainder,' are not indispensable to a residuary bequest of personal estate; but in various instances words and expressions quite informal have been

given this effect, out of regard to the testator's obvious intention.  Schouler on Wills (3d Ed.), section 522."

It follows from these views that the Chancery Court did not err in sustaining the exception taken by the Richmond Home for Ladies to so much of the finding of the commissioner as holds that after the death of J. C. Petty the bequest of $150 *per annum* in perpetuity should go to the heirs at law and next of kin of the testatrix.

It was stated at bar that in the event this court should affirm the decree of the Chancery Court in that particular a satisfactory composition of the respective claims of the trustees of the cemetery and the Richmond Home for Ladies to the fund in dispute would be made.  Further consideration of that phase of the case is, therefore, unnecessary.

For these reasons the decree of the Chancery Court is affirmed.

*Affirmed.*