EDWARD H. MASON *vs.* MASSACHUSETTS GENERAL HOSPITAL & others.

Middlesex.    November 28, 1910. — January 5, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Devise and Legacy*, Designation of beneficiary.    *Trust.    Words*, "Massachusetts Hospital."

One, who in 1863 was a hair dresser doing business on Spring Lane in Boston and was sixty-three years of age and a man of intelligence, having " the knowledge of men of that age moving about the city ordinarily," made a will which left the residue of his estate after the death of his wife to a trustee for certain purposes until the survivor of the testator's children should die either under twenty-one years of age or without issue, on the happening of which contingency, after making certain payments, the trustee was given the following direction: " All the residue and remainder of my property shall be given to the Massachusetts Hospital for diseased and wounded soldiers." The testator died in 1867, and the survivor of his children died without issue in 1908. A fund of $10,000 then was in the hands of the trustee to be disposed of. An association known as the Discharged Soldiers' Home had been established a few years before the will was made for the purpose of providing a home for sick and wounded soldiers who had been honorably discharged from the army of the United States, and the Legislature for several years had made appropriations to assist in its maintenance. A governor of the Commonwealth and his wife were intimate neighbors of the testator and the Governor's wife for three years immediately following the testator's death was an officer and one of the managers of the Home. That association was not in existence in 1908. The Massachusetts General Hospital was incorporated in 1810 and at the time the will was made was maintaining a hospital where diseased and wounded soldiers were treated as well as other patients, which fact was generally known. It had for some years been known and called by the name " Massachusetts Hospital," as well as by its corporate name. A single justice, who heard a bill in equity by the trustee for instructions, found among other facts that there was nothing in the case to show that the testator had had his attention called either to the Discharged Soldiers' Home

or to the Massachusetts General Hospital; or that he knew anything about them, except what may be presumed to have been known by a man who lived and worked in Boston as he did. *Held,* that the words " for diseased and wounded soldiers " in the clause in question were not descriptive of the institution which was to take, but of the purpose to which the gift was to be devoted, and that the testator intended that the residue should be given to the Massachusetts General Hospital, to be held and administered by it for diseased and wounded soldiers.

BILL IN EQUITY, filed in the Probate Court on February 28, 1910, seeking instructions as to the residuary clause, quoted in the opinion, of the will of John Ashton, late of Newton.

The proceedings in the Probate Court are described in the opinion.

On appeal to this court, the case was heard by *Hammond,* J. Besides the facts stated in the opinion, the single justice found that the testator made his will on December 17, 1863, and that he died on May 14, 1867. The will contained many bequests and then left the residue of the estate, after the death of the testator's wife, to trustees with directions as to the disposition of the income. After the death of the survivor of the testator's children under twenty-one years of age or without issue, the trustees were to make certain specific payments, and then to dispose of the residue according to the clause quoted in the opinion. The testator's last surviving child was Kate Ashton, who died on January 13, 1908, without issue.

The single justice also found that the testator and Governor Claflin and Mrs. Claflin were neighbors and intimate, and that in 1867, 1868 and 1869 Mrs. Claflin was one of the managers and officers of the Discharged Soldiers' Home. He also found that " at the time this will was made the Massachusetts General Hospital was, and for some years had been, known and called as well the Massachusetts Hospital as the Massachusetts General Hospital. I find that at the time this will was made, provision had been made there for the care of diseased and wounded soldiers, — not as a Home for Discharged Soldiers, but as a place where wounded and diseased soldiers should be treated, and that that was generally known, — that a wounded soldier could go there as any other patient could. But I do not find that this institution made any provision for the care of discharged soldiers as such or that it was intended as a Home for Soldiers."

The single justice reserved the case upon certain facts found by him for determination by the full court.

*A. Hemenway*, ( *J. Abbott* with him,) for the Massachusetts General Hospital.

*B. B. Jones*, ( *N. N. Jones* with him,) for the Trustees of the Soldiers' Home in Massachusetts.

MORTON, J.   This is a bill in equity by the surviving trustee under the will of one John Ashton for instructions as to the construction of the following residuary clause in said will: " 7th. All the residue and remainder of my property shall be given to the Massachusetts Hospital for diseased and wounded soldiers." The plaintiff has upwards of $20,000 in his hands to be disposed of under the clause in question.   Various parties were made defendants.   The Massachusetts General Hospital, the Massachusetts Homœopathic Hospital, the Trustees of the Soldiers' Home in Massachusetts, Mary G. Rustemeyer and the Attorney-General appeared in the Probate Court.   The others were all defaulted.   The Probate Court * ordered and decreed that the plaintiff " pay over said residue and remainder . . . to the Trustees of the Soldiers' Home in Massachusetts aforesaid, to receive and expend for the benefit of diseased and wounded soldiers in Massachusetts."   The Massachusetts General Hospital appealed.   The single justice was of opinion upon the facts found by him that the Massachusetts General Hospital was the legatee intended by the testator, but at the request of the parties reserved the case upon the facts found by him for the full court. The heir at law did not appear at the hearing in this court, and it is not contended by her, or any one else, that the contingency upon which the residuary clause was to become operative has not occurred.

The single justice found that the Trustees of the Soldiers' Home in Massachusetts was not in existence when the will was made, and that the Massachusetts Homœopathic Hospital was incorporated in 1851, and its first hospital was not established until 1871; and he found that neither of these institutions was intended by the testator.   Counsel for the Trustees of the Soldiers' Home do not contend that it was the institution intended by the testator.   Their contention is that the institution intended by

---

* *McIntire*, J.

the testator was an Association on Springfield Street in the city
of Boston, known as the Discharged Soldiers' Home, which had
been established a short time before the will was made, for the
purpose of providing a home for sick and wounded soldiers who
had been honorably discharged from the army of the United
States.   That association or institution has admittedly ceased to
exist; but it is contended by the Trustees of the Soldiers' Home
in Massachusetts that the gift constitutes a charitable trust, that
the case is one for the application of the *cy pres* doctrine, and
that the fund should be handed over to them to administer.

We interpret the words "for diseased and wounded soldiers"
in the clause in question, not as descriptive of the institution
which is to take, but of the purpose to which the gift is to be
devoted.    That, it seems to us, is the natural construction of the
language used.    The question then is, What institution or cor-
poration did the testator mean by the words " Massachusetts
Hospital"?

In the effort to ascertain whom the testator meant it is proper
to consider the circumstances existing at the time when the will
was made.    And if in the light of those it is plain what corpora-
tion or institution was intended, then such corporation or insti-
tution is to take regardless of the fact that there may be another
institution or corporation which would better carry out the tes-
tator's purpose.   See *Tucker* v. *Seaman's Aid Society*, 7 Met.
188.

The single justice found that the Massachusetts General Hos-
pital was incorporated in 1810, and that " at the time this will
was made . . . [it] was, and for some years had been, known and
called as well the Massachusetts Hospital as the Massachusetts
General Hospital."   He further found that at the time the will
was made " provision had been made there for the care of
diseased and wounded soldiers — not as a Home for Discharged
Soldiers, but as a place where wounded and diseased soldiers
should be treated, and that that was generally known.".   He found
that the testator was a hair dresser doing business on Spring
Lane in Boston; that he was sixty-three years of age when the
will was made; that he was a man of intelligence and " had the
knowledge of men of that age moving about the city ordinarily."
But there was nothing in the case, he says, upon which he could

find that the testator had had his attention called one way or another to either the Massachusetts General Hospital or the Discharged Soldiers' Home on Springfield Street, " or that he knew anything about them, except what may be presumed to be known by a man who lived and worked here as he did."

It is apparent from the findings of the single justice that the principal if not the sole purpose of the institution on Springfield Street was to care for sick and wounded soldiers, differing in that respect from the Massachusetts General Hospital, and it may well have appealed for sympathy and support to the patriotic feelings which so profoundly stirred all classes in this and other communities at the North at the time when the will was made. The Legislature for several years made appropriations for its support and maintenance, at first with the condition that an equal amount should be raised by private subscription, and later without that condition. It is possible, of course, that the testator knew of the existence of that institution. But it is hardly conceivable that if he had intended to make that institution the object of his bounty he would not have described it by some fitting name. The only institution to which the name which he has chosen naturally applies is the Massachusetts General Hospital. It is expressly found that that corporation was as well known by the name of the Massachusetts Hospital as by its corporate name at the time when the will was made. It had existed for a long time, and it is not unreasonable to suppose that the testator knew of it. Indeed it would seem that he must have known or heard of it. The name which he has used to describe the legatee describes that institution and no other ; and we think the conclusion to which the single justice came that the Massachusetts General Hospital was the legatee intended was correct, and that a decree should be entered ordering the fund to be paid to it, to be held and administered by it for the purposes named in the will.

*So ordered.*