ABBY POPE & others, executors, vs. FREEMAN HINCKLEY,
trustee, & others.

Norfolk.    March 22, 1911. — June 20, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Devise and Legacy*, Ademption.  *Corporation*, Reorganization.  *Executor and Administrator.  Charity.  Words*, " Trustees."

A testator by his will gave numerous legacies of shares of the first preferred stock of a certain corporation. About a year later he executed a codicil, which did not change this part of his will, and three years after that he died. At the date of his will he was the holder of a very large number of shares of the first preferred stock of the corporation and at the date of the codicil this number had been increased. The corporation was organized under the laws of New Jersey. About a year after the execution of the codicil and about two years before the testator's death the corporation passed into the hands of a receiver in New Jersey. In the interest of the testator and such other stockholders as chose to come in for the purpose of acquiring the assets and succeeding to the business of the New Jersey corporation, a new corporation was organized under the laws of Connecticut, to which, after payment by the receiver of all the obligations of the New Jersey corporation and the expenses of the receivership, the remaining assets were conveyed by the receiver about nine months before the testator's death under an order of the New Jersey court, and about a month later a decree was made which dissolved the New Jersey corporation and under a statute of that State declared its charter to be forfeited and void. The testator and other stockholders of the New Jersey corporation deposited their stock with a certain trust company, which issued to them negotiable voting trust certificates, which were to be exchanged for stock in the new corporation in accordance with a stated ratio. The exchange was not effected during the testator's lifetime, but was made by his executors shortly after his death pursuant to the prearranged scheme. Seven days before the testator's death a decree was entered by the New Jersey court that there should be paid to persons, who had not deposited or should not deposit their first preferred stock in the New Jersey corporation but had elected to take cash therefor, a dividend of a certain amount of money on each share of the first preferred stock. On the day of the death of the testator, an order was entered discharging the receiver from any further duty or responsibility and terminating the receivership. *Held*, that the legacies of shares of the first preferred stock of the New Jersey corporation were not adeemed by what took place before the death of the testator, and that they took effect subject to such engagements as the testator had entered into in regard to the reorganization of the corporation and the surrender and exchange of the stock bequeathed, because, although the New Jersey corporation had been dissolved, the testator at the time of his death still held the shares of stock in the defunct corporation, which gave him corresponding rights to stock in the new corporation ; and therefore that the legacies were to be satisfied by the transfer to the legatees of the number of shares of the stock in the Connecticut corporation to which the testator would have been entitled by virtue of the number of shares of the first preferred stock in the New Jersey corpora-

tion respectively named in such legacies, it being immaterial and unnecessary to decide whether the legacies were to be regarded as general or specific.

A direction by a testator in his will that certain legacies, together with all other bequests in his will, shall "be paid within three years from the probating of this will at the discretion of the trustees" is a direction to the executors of the will, the word "trustees" manifestly being used inadvertently, and is a direction that the legacies are to be paid in three years from the probate of the will or sooner at the discretion of the executors.

A legacy to a certain charity, called a mission, with a provision that it "is not to take effect unless" a person named "be alive and have charge of said mission at the time of" the testator's death, lapses if the person named has died during the testator's lifetime.

A legacy was given to the "Fresh Air Fund now under the charge of W." It appeared that W. was in charge of a department of the City Missionary Society of Boston called the "Fresh Air Fund." *Held*, that the legacy should be paid to the City Missionary Society of Boston to be used in the department designated.

A legacy given to "the Library Fund of the Massachusetts Commandery of the Military Order of the Loyal Legion of the United States" was held to be payable to "the Commandery of Massachusetts, Military Order of the Loyal Legion of the United States," to be used and applied for library purposes.

MORTON, J.   This is a bill for instructions by the executors of the will and codicil of Albert A. Pope.   The case was reserved* for the full court on the bill, answers and agreed facts, such decree to be entered as justice and equity may require.

The will was dated June 16, 1905, and the codicil May 28, 1906.   The testator died August 10, 1909.   At the date of the will he was the owner and holder of four thousand nine hundred and sixty-eight shares of the first preferred stock of the Pope Manufacturing Company, a New Jersey corporation with its principal office in Jersey City and its general offices in Hartford, Connecticut, and sixteen thousand four hundred and fifty shares of the second preferred stock and sixty-four thousand and twenty-four shares of the common stock.   At the date of the codicil his holdings of first and second preferred stock had been somewhat increased.   Those of the common stock remained the same.   By his will, which in this respect was not changed by the codicil, the testator gave numerous legacies of shares of the first preferred stock, four hundred and eighty shares in all, to various persons and corporations.   In August, 1907, after the execution of the codicil and about two years before the testator's death, the corporation passed into the hands of receivers under proceedings begun, prosecuted and concluded in New Jersey.   In

---

* By *Hammond*, J.

consequence thereof another corporation was organized on or about December 12, 1908, under the laws of Connecticut, to which, after payment by the receivers of all the obligations of the New Jersey corporation and of the expenses of the receivership, the remaining assets were duly conveyed by the receivers pursuant to an order of the New Jersey court authorizing the same, dated November 19, 1908, and a decree dated December 29, 1908, was entered dissolving the corporation, and, in accordance with the statute in New Jersey, declaring its charter forfeited and void.

The Connecticut corporation was formed in the interest of the testator and of such other stockholders of the New Jersey corporation as chose to come in for the purpose of acquiring the assets and succeeding to and carrying on the business of the New Jersey corporation. Pending the receivership proceedings and for the purpose of carrying out the plans thus instituted, the testator and other stockholders in the New Jersey corporation deposited their stock with the Central Trust Company of New York, and that company issued to them negotiable voting trust certificates which were to be exchanged, and which eventually were exchanged, for stock in the new corporation at the rate of ten shares of first preferred stock of the New Jersey corporation for seven and one half shares of the preferred stock and eight and three tenths shares of the common stock of the new corporation; and at the rate of ten shares of the second preferred stock of the New Jersey corporation for two shares of the common stock of the new corporation. The exchange was not made by the testator during his lifetime, but was made by his executors shortly after his death, pursuant to the scheme that he and other stockholders of the New Jersey corporation had thus entered into. The number of shares in the new corporation received by the executors was four thousand and ninety and one-half shares of the preferred stock and six thousand four hundred and fifty-eight and eighty-two one-hundredths shares of the common stock, and they still hold these shares with the exception of the fractions, which have been sold. Trust certificates representing two thousand shares of the common stock of the new corporation had been sold by the conservator of the testator before his death by order of the Probate Court of Norfolk County. Subsequent to the decree

dissolving the New Jersey corporation, a decree was entered on August 3, 1909, that there should be paid to the persons who had not deposited or should not deposit their first preferred stock with the Central Trust Company, but elected to take cash therefor, a dividend of $41.277 on each share of the first preferred stock of the New Jersey corporation, which the court found to be the value thereof based on the assets of the corporation after the payment of all its obligations and of the expenses of the receivership. Shortly afterwards, on August 10, 1909, an order was entered discharging the receivers from any further duty or responsibility in respect to their trust as receivers and thus terminating the receivership. The capital stock of the New Jersey corporation was $22,500,000, consisting of $2,500,000 first preferred stock, $10,000,000 of second preferred stock, and $10,000,000 of common stock. The capital stock of the new corporation is $6,500,000, of which $2,500,000 is preferred stock and $4,000,000 is common stock.

The first and principal question on which the executors desire instructions is whether the legacies of shares of the Pope Manufacturing Company of New Jersey were adeemed by what took place during the testator's lifetime, and if they were not, in what manner and on what basis the legacies shall be satisfied.

It is obvious, we think, that what took place was in substance and effect a reorganization under the laws of Connecticut and on a somewhat different footing of the New Jersey corporation with a liquidation in favor of creditors and those stockholders who did not care to come into the reorganization scheme. It is spoken of as a reorganization in the plan that was submitted to the stockholders and in the agreements that were entered into between the reorganization committee and the stockholders and between the reorganization committee and the voting trustees. Pending the receivership and the reorganization, the testator and other stockholders deposited their stock, in accordance with the reorganization scheme, with the Central Trust Company of New York, receiving in return therefor negotiable voting trust certificates. This evidently was done to secure the carrying out of the scheme if a sufficient number of stockholders assented to it, and as one step in the transmutation of stock in the old company into stock in the new. So far as the trust company ac-

quired any right or title to the stock thus deposited, it was only for the purpose of carrying out the reorganization scheme. If the scheme failed for any reason, then the stock was to be returned to the depositors. Subject to such rights therein as the trust company and other stockholders and the committees acting for them acquired by the engagements that they entered into respecting the reorganization, the right and title to the stock so deposited remained with the stockholders depositing the same. Those stockholders who had not become parties to the organization scheme held their stock, of course, free from any such obligations. When, therefore, the testator died and his will and codicil took effect he still held, in a sense at least, first preferred stock in the New Jersey corporation. Nothing had occurred, we think, which should be regarded as an ademption of the legacies of such stock. It is true that the New Jersey corporation had been dissolved, but it was not dissolved until after the new corporation had been organized, and the testator's rights to stock in the new corporation depended upon his continued recognition as a stockholder in the defunct corporation. The exchange by the executors of the voting trust certificates for shares in the new corporation was an exchange of something which derived its whole value and significance from the fact that it represented first preferred stock in the New Jersey corporation notwithstanding that corporation had been dissolved. We think, therefore, that the legacies of first preferred stock in the New Jersey corporation must be deemed to have taken effect subject to such engagements as the testator had entered into in regard to the reorganization and in regard to the surrender and exchange of first preferred stock in the New Jersey corporation for preferred stock in the new company. When that exchange was effected by the executors, the preferred stock of the Connecticut corporation stood to all intents and purposes, so far as legacies of the first preferred stock in the New Jersey corporation were concerned, in the place of that stock as far as that stock went. A view similar to that which we have expressed above as to the effect of a reorganization on the rights of the original stockholders was taken in *In re Rhoades*, 190 N. Y. 525, where an order of the Appellate Division of the Supreme Court in the first judicial department affirming the

order of the New York County Surrogate's Court was affirmed without an opinion.

It follows that the legacies in question are to be satisfied by the transfer to the various persons and corporations to whom they were given of the number of shares of preferred and common stock in the Connecticut corporation to which the testator would have been entitled by virtue of the number of first preferred shares in the New Jersey corporation named in such legacies. It follows also from what we have said that it is immaterial whether the legacies are to be regarded as general or specific, though they would seem to be general rather than specific. No particular shares of preferred stock are indicated in the various legacies, but only so many in each case out of the larger number belonging to the testator are given to each legatee. *Thayer* v. *Paulding*, 200 Mass. 98. *Slade* v. *Talbot*, 182 Mass. 256. We do not see how the testator's expressed desire that "the holdings of the above named Pope Manufacturing Company's securities should be continued intact so long as my sons shall be in active connection with or control of said Pope Manufacturing Company," even if construed to include the legacies in question, tends to make them specific.

The testator directs that the legacies in question "together with all other bequests herein named" (i. e. in his will) shall "be paid within three (3) years from the probating of this will at the discretion of the trustees." This means, we think, that the legacies are to be paid in three years from the probate of the will or sooner at the discretion of the executors. The word "trustees" is manifestly used inadvertently for "executors."

The legacy to Parker's Boston Helping Hand Mission "is not to take effect unless George W. Parker be alive and have charge of said Mission at the time of my [the testator's] death." It is stated in the petition and admitted by the answer that Mr. Parker died during the testator's lifetime. The condition on which the legacy was to take effect having failed, the legacy must be held to have lapsed.

The legacy given to the "Fresh Air Fund now under the charge of D. W. Waldron" should be paid over, we think, to the City Missionary Society of Boston, whereof the "Fresh Air

Fund," as it appears, is a department of which said D. W. Waldron is manager, to be used for that department.

The legacy given to " the Library Fund of the Massachusetts Commandery of the Military Order of the Loyal Legion of the United States" should be paid over to " The Commandery of Massachusetts, Military Order of the Loyal Legion of the United States," to be used and applied for library purposes.

*Decree accordingly.*

*M. F. Dickinson,* for the executors, stated the case.

*W. B. Farr,* for the trustee Hinckley and others.

*A. S. Hall,* for Berea College.

*C. E. Gross* (of Connecticut), for himself as trustee and his associate trustees.